## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* | Chapter 11 |
| **PATRIOT NATIONAL INC.,** *et al.,*[1] | Case No. 18-10189 (KG) |
| **Debtors.** | (Jointly Administered) |
| **CORPORATE CLAIMS MANAGEMENT, INC.,** | |
| **Plaintiff,** | Adv. Proc. No. 18-50307 (KG) |
| v. | |
| **MICHELLE SHAIPER AND BRENTWOOD SERVICES ADMINISTRATORS, INC.,** | |
| **Defendants.** | |

## FIRST AMENDED VERIFIED COMPLAINT
## FOR INJUNCTIVE AND OTHER RELIEF

Corporate Claims Management, Inc. ("CCMI"), a debtor in possession in the above-captioned jointly administered chapter 11 cases and the Plaintiff herein, by and through its attorneys, for its first amended complaint, alleges the following against Defendants Michelle Shaiper ("Shaiper") and Brentwood Services Administrators, Inc. ("Brentwood" and, together with Shaiper, "Defendants"):

---

1.  The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors' federal tax identification number, are: Patriot National, Inc. (1376), Patriot Services, LLC (1695); TriGen Insurance Solutions, Inc. (2501); Patriot Captive Management, LLC (2341); Patriot Underwriters, Inc. (0045); TriGen Hospitality Group, Inc. (6557); Patriot Risk Consultants, LLC (0844); Patriot Audit Services, LLC (5793); Patriot Claim Services, Inc. (9147); Patriot Risk Services, Inc. (7189); Corporate Claims Management, Inc. (6760); CWIBenefits, Inc. (0204); Forza Lien, LLC (7153); Contego Investigative Services, Inc. (0330); Contego Services Group, LLC (0012); Patriot Care Management, LLC (2808); Radar Post-Closing Holding Company, Inc. (2049); Patriot Technology Solutions, LLC (6855); and Decision UR, LLC (1826). The Debtors' headquarters are located at 401 East Las Olas Boulevard, Suite 1650, Fort Lauderdale, Florida 33301.

## INTRODUCTION

1.     This action is brought because of the breach of a non-solicitation agreement and the misappropriation of trade secrets and other confidential and proprietary information by Shaiper, a former trusted high-level CCMI employee, for the benefit of Brentwood, a direct competitor of CCMI, and Shaiper's new employer.

2.     Shaiper began to misappropriate and divert some of CCMI's most valuable employees and customers while still an employee of CCMI, using CCMI's trade secrets and other confidential and proprietary information. After leaving CCMI to work for Brentwood, Shaiper, aided and abetted by Brentwood, has been using CCMI's misappropriated confidential information to steal CCMI's customers and even more CCMI employees. Since December 2017, Shaiper and Brentwood have stolen (i) thirty CCMI employees—more than half of CCMI's workforce—and (ii) fifteen CCMI customers who generated total annual revenue to CCMI of nearly $3.4 million, which is more than half of CCMI's annual revenue.

3.     Defendants' actions constitute theft of trade secret and confidential business information and directly violate agreements binding on Shaiper. They also constitute acts to obtain possession of or exercise control over property of the CCMI estate, in violation of section 362 of the Bankruptcy Code. Unless this Court grants CCMI the relief it requests, unmistakable and substantial harm to CCMI's business and estate will continue, as Defendants would be afforded additional time to further their corporate raid on CCMI.

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b).

5.     This is a core proceeding under 28 U.S.C. § 157(b)(2) because, among other reasons, the proceeding seeks an order to turn over property of the estate.  Plaintiff consents to the entry of a final order or judgment by this Court.

6.     Venue is proper before this Court under 28 U.S.C. §§ 1408 and 1409 because the Debtor's chapter 11 case is pending in this judicial district.

## PARTIES

7.     Plaintiff CCMI is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in St. Louis, Missouri.

8.     Defendant Shaiper is an individual who, upon information and belief, resides in Missouri and is a citizen of that state.

9.     Defendant Brentwood is a corporation organized and existing under the laws of Tennessee with a principal place of business in Brentwood, Tennessee.

## FACTUAL BACKGROUND

**A.     CCMI and Its Business**

10.    CCMI was founded in 1992 to provide the risk management community with custom-tailored, high-quality claims administrative services and risk management information systems designed to the unique specifications of each customer.  CCMI does business in Missouri, Illinois, Kansas, Tennessee, Nebraska, and Ohio.

11.    Patriot National, Inc. acquired CCMI in April 2015 in an expansion of the company's fee-based product offerings.

12.    The strength of CCMI's relationships with its customers is a key driver of CCMI's business, and CCMI's employees are integral to the creation and maintenance of these customer relationships.

13.     CCMI has invested substantial time, effort, and money into the development of its workforce by, among other things, providing its personnel with in-depth training.  Through these efforts and the associated significant investment of time and expense, CCMI has ensured that its workforce has a deep understanding of CCMI's confidential pricing information, marketing plans, customer lists and contact information, customer requirements, and other confidential, proprietary, and trade secret information.

14.     The goodwill arising from the customer relationships developed between CCMI (through its workforce) and its customers belongs to, and is an asset of, CCMI, because it is the product of CCMI's significant investment.

**B.      Shaiper's Position as a Trusted Employee of CCMI**

15.     Shaiper was employed by CCMI or its predecessors from April 1996 through December 2017, based in CCMI's Chesterfield, Missouri office.

16.     On April 24, 2015, in connection with Patriot National, Inc.'s acquisition of CCMI, Shaiper executed an Employment Agreement and the Confidentiality, Non-Interference, and Invention Assignment Agreement (the "Non-Interference Agreement").  *See* Ex. A.

17.     Prior to her resignation and termination in December 2017, Shaiper was the Chief Operations Officer of CCMI.  In this role, she was responsible for, among other things, the oversight of CCMI's employees and some of CCMI's most important customer accounts.

18.     As a result of her trusted position at CCMI, Shaiper was privy to trade secret, confidential and proprietary information regarding CCMI's relationships with its customers and employees.  This included the intricacies of CCMI's confidential pricing, customer lists, customers' contractual terms, customer preferences, market opportunities,

employee salary information, and employee scope of duties, among other trade secret, confidential, and proprietary information that is the property of CCMI.

19.     Shaiper was trusted to maintain and develop relationships with some of CCMI's most important customers, often interacting with customers daily.  As a result, Shaiper learned significant details about the preference of these customers and understood what made CCMI's services attractive to those customers.  Likewise, Shaiper was trusted to oversee CCMI's employees, and through her role, learned confidential information about CCMI's employees.

20.     Specifically, Shaiper knew which employees to solicit and raid from CCMI, how best to solicit CCMI's customers for Brentwood, and how to best utilize the protected information belonging to CCMI with which she was entrusted while working for CCMI.

21.     This trade secret, confidential, and proprietary information was developed by CCMI's substantial efforts, and significant dedication of time and resources.

**C.      The Importance of CCMI's Employees, Customer Relationships & Confidential Information and Shaiper's Agreement Not to Interfere**

22.     The foundation for the success of CCMI's business is its established and ongoing relationships with its customers.  CCMI does business in a highly competitive industry, and the strength of its relationships with its customers enables CCMI to compete in this environment.  CCMI relies on its employees to nurture and manage these relationships effectively and in the best interests of the business.

23.     In recognition of the importance of these customer and employee relationships, CCMI places a high value on its trade secrets, confidential, and proprietary information, and has policies in place in order to maintain the confidentiality of this information.

24. Accordingly, through the Non-Interference Agreement, Shaiper acknowledged that she would acquire confidential information and trade secrets during the course of her employment, and agreed to certain reasonable and necessary terms for the protection of CCMI's confidential information during the term of her employment and thereafter:

> I acknowledge that, during the course of my employment, I will have access to information about the Company and its direct and indirect subsidiaries (together with the Company, the "Company Group") and that my employment with the Company shall bring me into close contact with confidential and proprietary information of the Company Group. In recognition of the foregoing, ***I agree, at all times during the term of my employment with the Company and thereafter, to hold in confidence, and not to use, except for the benefit of the Company Group, or to disclose to any person, firm, corporation, or other entity without written authorization of the Company, any Confidential Information that I obtain or create***. I further agree not to make copies of such Confidential Information except as authorized by the Company or to otherwise perform my duties under the Employment Agreement. I understand that "Confidential Information" means information that the Company Group has or will develop, acquire, create, compile, discover, or own, that has value in or to the business of the Company Group that is not generally known and that the Company wishes to maintain as confidential. I understand that Confidential Information includes, but is not limited to, any and all non-public information that relates to the actual or anticipated business and/or products, research, or development of the Company, or to the Company's technical data, trade secrets, or know-how, including, but not limited to, research, product plans, or other information regarding the Company's products or services and markets, customer lists, and customers (including, but not limited to, customers of the Company on whom I called or with whom I may become acquainted during the term of my employment), software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, finances, and other business information disclosed by the Company either directly or indirectly in writing, orally, or by drawings or inspection of premises, parts, equipment, or other Company property.

Ex. A, ¶ 1 (emphasis added).

25. In paragraph 5 of the Non-Interference Agreement, Shaiper expressly agreed, during her employment period, not to "directly or indirectly for my own account or for

the account of any other individual or entity, engage in Interfering Activities." Interfering

Activities are defined as:

> (A) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Person employed by, or providing consulting services to, any member of the Company Group to terminate such Person's employment or services (or in the case of a consultant, materially reducing such services) with the Company Group; (B) hiring any individual who was employed by the Company Group within the six (6) month period prior to the date of such hiring; or (C) encouraging, soliciting, or inducing, or in any manner attempting to encourage, solicit, or induce, any Business Relation[2] to cease doing business with or reduce the amount of business conducted with the Company Group, or in any way interfering with the relationship between any such Business Relation and the Company Group.

*See* Ex. A, ¶ 5.

26.     Shaiper further agreed not to disparage CCMI, during her employment period and at all times thereafter, in paragraph 5(d):

> I agree that during the Employment Period, and at all times thereafter, I will not make any disparaging or defamatory comments regarding any member of the Company Group or their respective current or former directors, officers, or employees in any respect or make any comments concerning any aspect of my relationship with any member of the Company Group or any conduct or events which precipitated any termination of my employment from any member of the Company Group. However, my obligations under this subparagraph (d) shall not apply to disclosures required by applicable law, regulation, or order of a court or governmental agency.

*See* Ex. A, ¶ 5(d).

27.     Shaiper also agreed to the reasonableness of the obligations contained in the Non-Interference Agreement in paragraph 6:

---

2.  "Business Relation" is defined as "any current or prospective client, customer, licensee, supplier, or other business relation of the Company Group, or any such relation that was a client, customer, licensee or other business relation within the prior six (6) month period, in each case, to with whom I transaction business or whose identity became known to me in connection with my relationship with, or employment by, the Company."

> I acknowledge and recognize the highly competitive nature of the Company's business, that access to Confidential Information renders me special and unique within the Company's industry, and that I will have the opportunity to develop substantial relationships with existing and prospective clients, accounts, customers, consultants, contractors, investors, and strategic partners of the Company Group during the course of and as a result of my employment with the Company. In light of the foregoing, I recognize and acknowledge that the restrictions and limitations set forth in this Non-Interference Agreement are reasonable and valid in geographical and temporal scope and in all other respects and are essential to protect the value of the business and assets of the Company Group. I further acknowledge that the restrictions and limitations set forth in this Non-Interference Agreement will not materially interfere with my ability to earn a living following the termination of my employment with the Company and that my ability to earn a livelihood without violating such restrictions is a material condition to my employment with the Company.

*See* Ex. A, ¶ 6.

28.     In paragraph 8 of the Non-Interference Agreement, Shaiper agreed that CCMI is entitled to injunctive relief in the event Shaiper breached any of the terms of the Non-Interference Agreement:

> I expressly acknowledge that any breach or threatened breach of any of the terms and/or conditions set forth in this Non-Interference Agreement may result in substantial, continuing, and irreparable injury to the members of the Company Group. Therefore, I hereby agree that, in addition to any other remedy that may be available to the Company, any member of the Company Group shall be entitled to seek injunctive relief, specific performance, or other equitable relief by a court of appropriate jurisdiction in the event of any breach or threatened breach of the terms of this Non-Interference Agreement without the necessity of proving irreparable harm or injury as a result of such breach or threatened breach and without the posting of a bond.

*See* Ex. A, ¶ 8.

29.     In paragraph 14 of the Non-Interference Agreement, Shaiper and CCMI agreed that the Non-Interference Agreement is governed by and is to be construed under the laws of the state of Florida. *See* Ex. A, ¶ 14.

30.     The terms of the Non-Interference Agreement are reasonable and necessary to protect CCMI's legitimate interests.

**D.     While Still Employed by CCMI, Shaiper Surreptitiously Launched a Plan to Raid CCMI's Employees and Customers For the Benefit of CCMI's Competitor, Brentwood, Using CCMI's Confidential Information.**

31.     Shaiper planned her exit from CCMI well in advance of her actual resignation date, and perfected her scheme to use the knowledge, insight, and trade secrets she obtained from CCMI to solicit for Brentwood, a competitor, CCMI's existing customers and employees while she was still employed by CCMI.

32.     After receiving an employment offer from Brentwood on December 12, 2017, in mid-December 2017, while still employed at CCMI, Shaiper held a meeting of the employees of CCMI to discuss her plan to raid CCMI's employees and customers.  At that meeting, she acknowledged that she initiated her raiding plan as early as December 1, 2017.

33.     Shaiper announced her plan to resign and abscond with CCMI's trade secrets, customers, and employees.  She informed the other employees of her "bigger plan" that included leaving "moles" behind and then to "all be together as a team again":

> [J]ust know that there is a bigger plan, and I would like to see everybody part of that plan.  I'm not going to say too much more about what the plan is, but you're all in our plan . . . There are people that are going to be here to continue to service our accounts until we figure out where we are all going to land together.
> …
> We have to try to keep our clients the best that we can, so we have to have some people that are going to move forward and try to retain those clients, maybe somewhere else, and people that stay here for a while and keep things alive and going until we can all be together as a team again.  It just has to be somewhere else…
> . . .
> The idea is to get everybody to move over to where we're going, I don't know if that's [going to] happen, but I would say, get your resumes together because it'd be stupid not to.

34.     At that time, Shaiper made disparaging remarks about CCMI and its ability to continue in business.  Shortly after the meeting, Shaiper tendered her resignation.  On December 29, 2017, Shaiper was terminated for cause for violating the Non-Interference Agreement.  Shaiper commenced employment with Brentwood in January 2018.

35.     Brentwood, like CCMI, is a provider of insurance-related services, including workers' compensation-related services.  *See* Brentwood Services Administrators Overview, available at http://www.bwood.com/brentwood-services-administrators-overview (last accessed April 4, 2018).  Brentwood is a direct competitor of CCMI.

**E.     Solicitation of CCMI Employees**

36.     Shaiper, aided and abetted by Brentwood, took affirmative steps, beginning when she was still employed at CCMI, to induce CCMI's employees to leave CCMI to work for its direct competitor, Brentwood, in violation of her contractual non-solicitation obligation.

37.     Shaiper's employee raid of CCMI was successful.  Since December 2017, Defendants have solicited and hired ***thirty*** of CCMI's employees—more than half of CCMI's workforce.  After joining Brentwood, Shaiper has built on and continued the plan she launched in December 2017 while still a CCMI employee to raid CCMI's employees to join Brentwood.  The sheer size and scope of the employee raid demonstrates that Defendants orchestrated a corporate raid in an effort to eliminate CCMI's presence in the marketplace and its ability to provide services to its customers.

38.     Defendants induced the CCMI employees they raided to leave *en masse* in order to misappropriate CCMI's customers.  Defendants knew or should have known that CCMI's customers would transfer their business to Brentwood if the CCMI employees who serviced them joined Brentwood, especially if CCMI was stripped of more than half of its

workforce. The Defendants' corporate raid has severely impacted CCMI's ability to conduct business, service its existing customers, and attract new customers. At the same time, this corporate raid enabled Brentwood to misappropriate CCMI's customers.

**F.      Solicitation of CCMI's Customers**

39.      While still employed by CCMI, Shaiper created a spreadsheet listing all of CCMI's customers, the status of their contracts, the renewal date on the contract, and the key terms of the contract. With Brentwood's aid, Shaiper improperly used this proprietary, confidential, and trade secret information she acquired while still employed by CCMI to aid Brentwood in inducing CCMI's customers to transfer their business to Brentwood. Shaiper continues to use this proprietary, confidential, and trade secret information at Brentwood in direct violation of the Non-Interference Agreement.

40.      Since December 2017, Shaiper has raided *fifteen* CCMI customers, with aggregate annual revenue of nearly $3.4 million, to leave CCMI and become customers of Brentwood.

41.      Unless enjoined, Defendants' actions will cause CCMI irreparable harm. The risk of Defendants' activities to CCMI's business is irreparable. Since December 2017, while a trusted high-level employee of CCMI, and continuing after she became employed by Brentwood, Shaiper has been misappropriating CCMI's trade secret, confidential, and proprietary information for Brentwood, and has raided both employees and customers in violation of the express terms of her Non-Interference Agreement.

42.      As recently as March 15, 2018, a Brentwood employee, on her last day employed by CCMI, printed confidential customer information from CCMI's password-protected system.

43.     Prompt action is necessary to prevent further damage to CCMI and its estate.  Injunctive relief to enjoin Defendants from engaging in unlawful competition with CCMI, is necessary to prevent further irreparable harm to CCMI and the value of CCMI's estate.

## COUNT I
### (VIOLATION OF AUTOMATIC STAY, 11 U.S.C. § 362(a)(3) and (k))
### (Against Defendants)

44.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

45.     CCMI's trade secrets, confidential, and proprietary information, which were misappropriated and disclosed by Shaiper, and used by Brentwood, constitute property of CCMI's estate pursuant to section 541 of the Bankruptcy Code.  CCMI's contractual rights under the Non-Interference Agreement constitute property of the estate pursuant to section 541 of the Bankruptcy Code.

46.     Defendants willfully violated, and continue to violate, the automatic stay in effect pursuant to section 362 of the Bankruptcy Code through their actions in obtaining and maintaining possession of, exercising control over, and using and benefitting from the trade secrets, confidential, and proprietary information that is the property of CCMI's estate.

47.     Defendants willfully violated, and continue to violate, the automatic stay in effect pursuant to section 362 of the Bankruptcy Code by failing to perform their own obligations to CCMI or by procuring the nonperformance of others' obligations to CCMI.

## COUNT II
### (TURNOVER OF PROPERTY OF THE ESTATE, 11 U.S.C. § 542)
### (Against Defendants)

48.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

49.     CCMI's trade secrets, confidential, and proprietary information, which were misappropriated and disclosed by Shaiper constitute property of CCMI's estate pursuant to section 541 of the Bankruptcy Code.  The trade secrets, confidential, and proprietary information are of substantial value, benefit and use to CCMI.

50.     Defendants have possession, custody, and/or control of the trade secrets, confidential, and proprietary information.

51.     Accordingly, Defendants must deliver to CCMI an account for the trade secrets, and confidential and proprietary information, or the value of the trade secrets, confidential, and proprietary information pursuant to section 542(a) of the Bankruptcy Code.

**COUNT III**
**(FEDERAL DEFEND TRADE SECRETS ACT)**
**(Against Defendants)**

52.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

53.     The acts of the Defendants, as set forth herein, constitute misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1839.

54.     CCMI possessed confidential information, including customer pricing, customer lists, customers' contractual terms, customer preferences, market opportunities, employee salary information, and employee scope of duties, which constitute trade secrets.

55.     Such information is used in connection with CCMI's services, which are offered across multiple states.

56.     CCMI took reasonable measures to maintain the secrecy and confidentiality of such information.  Those reasonable efforts include, but are not limited to, requiring certain employees to enter contracts that prohibited, among other things, unauthorized disclosure of such information and the fiduciary and other duties owed by employees with access

to such information. Such information cannot be properly acquired or duplicated because of the limited number of individuals who can access the information, and the contractual obligations and fiduciary duties imposed on such individuals.

57. Shaiper was subject to such an agreement and, as Chief Operations Officer, had a duty to maintain confidentiality and not to use the materials she had access to pursuant to her employment relationship with CCMI. Shaiper further promised and agreed to maintain the confidentiality of such information

58. Such information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by other persons who can obtain economic value from their disclosure or use.

59. Shaiper has disclosed CCMI's trade secrets to Brentwood. Shaiper and Brentwood have used and continue to use, such trade secrets.

60. Defendants misappropriated and use, and continue to misappropriate and use, CCMI's trade secrets knowing or having reason to know that the trade secrets were acquired by improper means.

61. Defendants' misappropriation and use of CCMI's trade secrets has been willful and malicious.

62. As a direct and proximate result of Defendants' misappropriation and use of CCMI's trade secrets, CCMI has been injured irreparably, and has sustained significant damages, in an amount to be determined by the evidence at trial.

63. CCMI also is threatened with additional and ongoing irreparable injury by loss of further employees and customers, goodwill, and income in amounts that may be impossible to determine unless Defendants are enjoined and restrained by an order from this Court.

64.     CCMI has no adequate remedy at law and is entitled to an injunction pursuant to 18 U.S.C. § 1836(3)(A).

65.     Pursuant to 18 U.S.C. § 1836(B), CCMI is entitled to damages for actual loss and unjust enrichment caused by the misappropriation of its trade secrets.

66.     Pursuant to 18 U.S.C. § 1836(C), CCMI is entitled to exemplary damages for Defendants' willful and malicious misappropriation of CCMI's trade secrets.

67.     Pursuant to 18 U.S.C. § 1836(D), CCMI is entitled to recovery of its attorney's fees.

## COUNT IV
## (BREACH OF CONTRACT)
### (Against Shaiper)

68.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

69.     Shaiper knowingly and voluntarily agreed to enter into the Non-Interference Agreement with CCMI and to abide by its terms.

70.     The Non-Interference Agreement is a valid and enforceable contract.

71.     The restrictions in the Non-Interference Agreement are reasonable, do not impose an undue burden on Shaiper, and are not injurious to the public.

72.     Shaiper has retained, used, misappropriated, and/or disclosed CCMI's trade secrets, confidential, and proprietary information, and continues to retain, use, misappropriate and disclose such information while employed by Brentwood, in violation of the terms of the Non-Interference Agreement.

73.     Shaiper began while still employed at CCMI to solicit, and continues to solicit, CCMI employees to join Brentwood in violation of the terms of the Non-Interference Agreement.

74.     Shaiper began while still employed at CCMI to solicit, and continues to solicit, business from CCMI customers in violation of the terms of the Non-Interference Agreement.

75.     Shaiper has made disparaging or defamatory comments regarding CCMI in violation of the terms of the Non-Interference Agreement.

76.     CCMI has suffered, and will continue to suffer, irreparable harm and injury as a result of Shaiper's breaches of the Non-Interference Agreement, including, but not limited to, financial injury; lost business opportunities and customers; misuse of trade secrets, confidential, and proprietary information; and destruction of good will.

77.     CCMI has no adequate remedy at law.  Such conduct will continue to cause irreparable harm unless restrained by the Court.

78.     Pursuant to the terms of the Non-Interference Agreement, CCMI is entitled to apply for injunctive relief to restrain Shaiper from violating the Non-Interference Agreement, and seek all available damages for said breach.

## COUNT V
## (TORTIOUS INTERFERENCE WITH CONTRACT)
### (Against Brentwood)

79.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

80.     Brentwood knew or should have known that Shaiper had entered the Non-Interference Agreement with CCMI.

81.     Brentwood has procured Shaiper's breach of the Non-Interference Agreement intentionally and without justification.

82.     As a result of the fomentation of contractual breaches, CCMI suffered, and will continue to suffer, irreparable harm.

83.     To remedy this tortious interference, Brentwood must be enjoined from procuring or facilitating Shaiper's continued breach of her Non-Interference Agreement. Brentwood must also pay damages in an amount to be determined at trial.

## COUNT VI
## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF MISSOURI UNIFORM TRADE SECRETS ACT
### (Against Defendants)

84.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

85.     CCMI developed its trade secrets, including but not limited to, contract pricing terms and structure, customer lists, customers' contractual terms, customer preferences, market opportunities, employee salary information, and employee scope of duties, with substantial effort.

86.     This information constitutes trade secrets because it has independent economic value and is subject to CCMI's reasonable efforts to maintain their secrecy.

87.     CCMI has taken substantial steps to protect its trade secrets from disclosure outside of its business, and amongst its own employees when not absolutely necessary.

88.     Because of the nature of Shaiper's position while employed at CCMI, during the course of her employment, Shaiper had access to and was made privy to CCMI's trade secrets.

89.     Shaiper, without authority and through improper means, has or will inevitably misappropriate, misuse, and disclose CCMI's trade secrets and its confidential and proprietary information.  By working for Brentwood, Shaiper also threatens to continue to misappropriate CCMI's trade secrets by using them while employed by Brentwood and/or

disclosing them to Brentwood, despite her statutory and contractual duties to maintain their confidentiality.

90.     Brentwood misappropriated CCMI's trade secrets and confidential and proprietary information when it acquired and/or used information it obtained from or was given by Shaiper.

91.     The misappropriation of trade secrets by Defendants has and/or will cause substantial damage to CCMI including, but not limited to, financial injury; lost business opportunities and customers; misuse of trade secrets, confidential, and proprietary information; and destruction of good will.

92.     The Missouri Uniform Trade Secrets Act provides that "actual or threatened misappropriation may be enjoined."  Mo. Stat. § 417.455(1).

93.     The threat of further imminent irreparable injury to CCMI outweighs the threatened harm of the proposed injunctive relief against Defendants.

94.     Any injunctive relief, if issued, will not disserve the public interest.

95.     CCMI will be irreparably harmed without the injunctive relief requested because of Defendants' misappropriation and threatened misappropriation of CCMI's trade secrets, and CCMI does not have an adequate remedy at law.

96.     Because Defendants willfully and maliciously misappropriated CCMI's trade secrets, CCMI is entitled to an award of reasonable attorney's fees and exemplary damages.

## COUNT VII
## MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF FLORIDA UNIFORM TRADE SECRETS ACT
### (Against Defendants)

97.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

98.     CCMI developed its trade secrets, including but not limited to, contract pricing terms and structure, customer lists, customers' contractual terms, customer preferences, market opportunities, employee salary information, and employee scope of duties, with substantial effort.

99.     This information constitutes trade secrets because it has independent economic value and is subject to CCMI's reasonable efforts to maintain their secrecy.

100.     CCMI has taken substantial steps to protect its trade secrets from disclosure outside of its business, and amongst its own employees when not absolutely necessary.

101.     Because of the nature of Shaiper's position while employed at CCMI, during the course of her employment, Shaiper had access to and was made privy to CCMI's trade secrets.

102.     Shaiper, without authority and through improper means, has or will inevitably misappropriate, misuse, and disclose CCMI's trade secrets and its confidential and proprietary information.  By working for Brentwood, Shaiper also threatens to continue to misappropriate CCMI's trade secrets by using them while employed by Brentwood and/or disclosing them to Brentwood, despite her statutory and contractual duties to maintain their confidentiality.

103.     Brentwood misappropriated CCMI's trade secrets and confidential and proprietary information when it acquired and/or used information it obtained from or was given by Shaiper.

104.     The misappropriation of trade secrets by Defendants has and/or will cause substantial damage to CCMI including, but not limited to, financial injury; lost business

opportunities and customers; misuse of trade secrets, confidential, and proprietary information; and destruction of good will.

105. The Florida Uniform Trade Secrets Act provides that "actual or threatened misappropriation may be enjoined." Fl. Stat. § 688.003.

106. The threat of further imminent irreparable injury to CCMI outweighs the threatened harm of the proposed injunctive relief against Defendants.

107. Any injunctive relief, if issued, will not disserve the public interest.

108. CCMI will be irreparably harmed without the injunctive relief requested because of Defendants' misappropriation and threatened misappropriation of CCMI's trade secrets, and CCMI does not have an adequate remedy at law.

109. Because Defendants willfully and maliciously misappropriated CCMI's trade secrets, CCMI is entitled to an award of reasonable attorney's fees and exemplary damages.

## COUNT VIII
### (BREACH OF DUTY OF LOYALTY)
### (Against Shaiper)

110. Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

111. During her employment with CCMI or its predecessors, Shaiper was a trusted and highly compensated employee and owed a duty of loyalty to CCMI to act in the best interests of CCMI.

112. Shaiper knowingly, intentionally, and purposefully lured CCMI's customers and employees away, and improperly used and/or disclosed CCMI's trade secret, confidential, and proprietary information, up to the date of her resignation and thereafter.

113. Shaiper's actions violated her duty of loyalty to CCMI.

114.     As a result, Shaiper was a faithless servant, and must disgorge her ill-gotten gains, and CCMI is entitled to recover all sums paid to Shaiper as compensation during the period that she was disloyal.

**COUNT IX**
**(AIDING AND ABETTING BREACH OF DUTY OF LOYALTY)**
**(Against Brentwood)**

115.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

116.     Brentwood had actual knowledge that Shaiper was a high-level employee of CCMI when it solicited her for employment.

117.     Because Brentwood knew that Shaiper was a CCMI employee and Chief Operations Officer, Brentwood knew or should have known that Shaiper owed CCMI a fiduciary duty of loyalty.

118.     Upon information and belief, despite its knowledge of the fiduciary duty Shaiper owed to CCMI, Brentwood encouraged Shaiper to breach that duty by asking Shaiper to obtain CCMI's confidential information and trade secrets in order to give Brentwood an unfair competitive advantage over CCMI, and assist Brentwood in raiding CCMI's employees, who CCMI had invested considerable resources in by providing them with extensive training.

119.     Upon information and belief, Brentwood also substantially assisted Shaiper in breaching her fiduciary duty to CCMI by providing her with economic and other support that enabled her to interfere with CCMI's customer relationships, obtain CCMI's confidential information and trade secrets, and raid CCMI's employees.

120.     Brentwood affirmatively decided to participate in Shaiper's breach of her fiduciary duty to CCMI.  As a result of aiding and abetting Shaiper in breaching her fiduciary

duty of loyalty to CCMI, Brentwood proximately caused monetary damages and irreparable harm to CCMI.

**COUNT X**
**(TORTIOUS INTERFERENCE WITH CCMI'S BUSINESS RELATIONS)**
**(Against Defendants)**

121.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

122.     CCMI had and has a legitimate business relationship with each of its customers, as discussed above.  Many of these customers had long standing business relationships with CCMI.

123.     Defendants had knowledge of CCMI's existing and prospective business relationships with its customers.

124.     Defendants intentionally and tortiously interfered with and sought to terminate CCMI's business relationships with its customers.  Defendants acted improperly, willfully and with malice, enjoyed no privilege and were not justified in their interference with CCMI's business relationships with its customers.

125.     Defendants' intentional and tortious conduct has caused some of CCMI's customers to cease business relations with CCMI and to immediately thereafter begin business relations with Brentwood.

126.     As a direct result of Defendants' tortious interference with CCMI's business relations, CCMI has suffered and will continue to suffer damages resulting from the loss of its business opportunities and contracts, deterioration of competitive position, and the loss and destruction of its customer relationships and goodwill.

## COUNT XI
## (CIVIL CONSPIRACY)
### (Against Defendants)

127.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

128.    Defendants maliciously acted in concert and pursuant to a common design and scheme to pursue an unlawful object or course of action to be accomplished by unlawful means, with the purpose of competing against CCMI and misappropriating CCMI's trade secrets, confidential, and proprietary information, to the detriment of CCMI.

129.    Defendants committed acts in furtherance of the conspiracy, including, but not limited to, breach of contract, tortious interference with contract, misappropriation of trade secrets, and breach of the duty of loyalty, without a reasonable or lawful excuse.  Both Defendants were willful participants in this joint activity.

130.    As a direct and proximate result of these unlawful acts, CCMI has suffered damages as a result of Defendants' actions.

## COUNT XII
## (UNFAIR COMPETITION)
### (Against Defendants)

131.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

132.    Defendants' conduct and actions, and the inevitable disclosure of confidential and proprietary information, as described above, constitute unfair competition in violation of the common law.

133.    Defendants have caused harm to the commercial relationships between CCMI and its customers and former employees by engaging in actionable unfair business and trade practices.

134.     Defendants' unfair competition has damaged CCMI or will cause damage to CCMI, which has suffered, and will continue to suffer, irreparable harm that justifies enjoining Defendants from their illegal and improper actions, along with all other remedies available to CCMI.  CCMI has also suffered or will suffer monetary damages.

## COUNT XIII
### (UNJUST ENRICHMENT)
#### (Against Defendants)

135.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

136.     By reason of the foregoing acts, CCMI has been impoverished and has been deprived of its rightful property and earnings.  Defendants have unjustly retained a benefit to CCMI's detriment, and have been enriched without justification and at CCMI's expense by committing the aforesaid tortious acts.

137.     Defendants' retention of these benefits violates fundamental principles of justice, equity, and good conscience.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff hereby respectfully requests that this Court enter judgment in favor of the Plaintiff and an order:

a.      Declaring that Defendants have willfully violated the automatic stay in effect pursuant to 11 U.S.C. § 362.

b.      Enjoining Defendants from violating the automatic stay in effect pursuant to 11 U.S.C. § 362.

c.      Compelling Defendants to turn over CCMI's trade secrets, confidential, and proprietary information, and any other property of CCMI's estate

taken by any means by Shaiper, or received by any means by Brentwood, and to certify their compliance with the Court's order.

d.    Enjoining Defendants from using and/or disclosing, directly or indirectly, CCMI's trade secrets; using and/or disclosing, directly or indirectly, CCMI's confidential and proprietary information; contacting any customer or employee of CCMI's; and tortiously interfering with CCMI's ongoing contractual or business relationships.

e.    Declaring that the Non-Interference Agreement is valid and enforceable, and that Shaiper must abide by all of the terms.

f.    Declaring that Shaiper's unauthorized conduct violates CCMI's rights under the Non-Interference Agreement.

g.    Declaring that Shaiper was a faithless servant in violation of her duty of loyalty prior to her resignation from CCMI.

h.    Compelling Shaiper to provide an accounting and disgorgement of earned income pursuant to Missouri law;

i.    Compelling Shaiper to forfeit compensation paid by CCMI pursuant to Florida law;

j.    Awarding actual and punitive damages, including costs and attorneys' fees, to CCMI for such violations arising from the foregoing acts of breach of contract, misappropriation of trade secrets, breach of duty of loyalty, tortious interference with contract, tortious interference with business relations, civil conspiracy, unfair competition, and violation of the automatic stay, plus interest as appropriate.

k.  Granting such other and further relief, as provided for by contract, statute and law, or as this Court deems just or proper.

Dated:  April 5, 2018
        Wilmington, Delaware

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
James E. O'Neill (DE Bar No. 4042)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
Email: ljones@pszjlaw.com
        joneill@pszjlaw.com
        pkeane@pszjlaw.com

-and-

Kathryn A. Coleman
Ned. H. Bassen
Christopher Gartman
Erin E. Diers
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
Telephone:  (212) 837-6000
Facsimile:  (212) 422-4726
Email:  katie.coleman@hugheshubbard.com
        ned.bassen@hugheshubbard.com
        chris.gartman@hugheshubbard.com
        erin.diers@hugheshubbard.com

*Counsel for the Debtors*